# EXHIBIT A

to the Brief in Support of Motion to Leave to
File Motion to Suppress Evidence

**Defendant Bububhai Rathod's Motion
to Suppress Evidence and Brief in Support**

United States District Court
Western District of Michigan
Southern Division

**United States of America**,

    *Plaintiff,*                        Case No. 1:12-cr-17

    v.

                                           Hon. Janet T. Neff
                                           US District Judge

**Babubhai Rathod,** *et al*,

    *Defendants.*

---

### DEFENDANT BABUBHAI RATHOD'S MOTION TO SUPPRESS EVIDENCE

Now comes Defendant, Babubhai Rathod, by and through his attorneys, Myers Nelson Dillon & Shierk, PLLC, and respectfully requests that this Court suppress any evidence seized without a warrant and in violation of the 4th Amendment. For the reasons set forth in the accompanying brief in support of this motion, Defendant Rathod requests that the Court allow him to participate in the evidentiary hearing scheduled for November 5, 2012 and that, at the conclusion of the hearing, the Court suppress any evidence that it finds to have been gathered in violation of the 4th Amendment.

In accordance with W.D. Mich. LCrR 12.4, the undersigned counsel has conferred with Assistant United States Attorney Raymond Beckering III who has stated that he does not concur and that the government is opposed to this present motion.

Date: October 11, 2012                                  Respectfully Submitted,

                                                             **MYERS NELSON DILLON & SHIERK, PLLC**

                                                             By:       s/J. Terrance Dillon
                                                                         J. Terrance Dillon (P23404)
                                                                               Michael P. Farrell (P57321)
                                                                               Attorneys for Defendant Babubhai Rathod
                                                                               125 Ottawa Avenue NW, Suite 270
                                                                               Grand Rapids, MI 49503
                                                                               (616) 233-9640
                                                                               tdillon@mnds-pllc.com

United States District Court
Western District of Michigan
Southern Division

**United States of America**,

       *Plaintiff,*    Case No. 1:12-cr-17

    v.

          Hon. Janet T. Neff
          US District Judge

**Babubhai Rathod,** *et al*,

       *Defendants.*

---

### BRIEF IN SUPPORT OF DEFENDANT RATHOD'S MOTION TO SUPPRESS

---

#### Background

On August 17, 2012, James Burdick, attorney for Defendant Babubhai Rathod, filed a motion and supporting brief requesting, among other things, discovery regarding the search warrants issued on January 19 and 20, 2012 (Docket No. 184) (the *Prior Discovery Motion*).[1] The undersigned counsel has had numerous meetings and telephone conferences with Assistant United States Attorney Raymond Beckering III over the past ten days in an attempt to resolve the various issues with regard to the searches. As a result of these discussions and the representations of the government, the issues have been substantially narrowed.

---

[1] Attached as Exhibit 1 is the affidavit in support of the search warrant issued by Magistrate Judge Joseph G. Scoville on January 20, 2012. Attached as Exhibit 2 is the affidavit in support of the search warrant issued by Magistrate Judge Michael J. Hluchaniak on January 19, 2012. The affidavits are virtually identical for each search warrant. Unless indicated otherwise, any reference to the affidavits will be to the affidavit filed in support of the search warrant issued by Magistrate Judge Scoville (the *Affidavit*), Exhibit 1.

**Prior Discovery Motion**

In the Prior Discovery Motion and supporting brief, Defendant Rathod raised many questions regarding the Affidavit because the primary evidence in support of the Affidavit was documents obtained by cooperating witnesses from companies the government alleged were owned by Defendant Rathod. The Affidavit made reference to four cooperating witnesses identified as CW-1, CW-2, CW-3 and CW-4.[2]

The Affidavit contained scores of detailed references to documents provided by unidentified cooperating witnesses. The Affidavit acknowledged that undercover activity of the cooperating witnesses was done "at the request of law enforcement." The Affidavit does not contain any references to *when, where or by whom* any of the referenced documents were seized. Instead, the Affidavit was entirely devoid of reference to any of the circumstances under, or date upon which the government agents obtained these documents.

A fair reading of the Affidavit as a whole demonstrated that the government may well have had some knowledge of, or acquiesced in, the actions of some of the cooperating witnesses, and that the cooperating witnesses' intentions were to collect evidence *for the government*. This conclusion was buttressed by one of the cooperating witnesses who testified that he had assisted the government in accumulating evidence in this investigation since 2009 or 2010.[3]

Without any discovery from the government, the Affidavit clearly left the impression that the government received documents from the cooperating witnesses at various times throughout

---

[2] For more details about the cooperating witnesses, see the Brief in Support of Motion for Discovery and Additional Time for Filing Motions, Docket No. 185.

[3] See Exhibit 1 to the Brief in Support of the Prior Discovery Motion is the testimony of Dr. David L. Pastoor in the proceeding captioned *Pastoor v. Lakeshore Spine and Pain, PC*, Division of Unemployment Appeals, Appeal Docket No. B2012-06973 at pp. 23-24.

the investigation and before the Affidavit was written. The Affidavit avoided mentioning, and appeared to conceal, how, when and where the cooperating witnesses took the documents, as well as how, when and where the government received the documents which had been taken by the cooperating witnesses.

As set forth in more detail in the Prior Discovery Motion and accompanying brief, one could glean the following from the Affidavit:

1. Amber West (*Cooperating Witness CW-1*) took spreadsheets, handwritten lists and calculations, and checks, and provided these documents to the governments.[4] Ms. West also acted as an undercover agent for the government. She secretly recorded separate conversations with three doctors, each of whom allegedly received kickbacks. During these undercover conversations, Ms. West purportedly gave each doctor one or more checks that she had taken from U.S. Rehab Service, P.C. (*U.S. Rehab*) or Lakeshore Spine & Pain, P.C. (*Lakeshore Spine and Pain*).

2. Sarah Flannery (*Cooperating Witness CW-2*) surreptitiously recorded conversations with a physician assistant and a doctor, each of whom allegedly received kickbacks. She recorded these conversations as an undercover government agent. During these conversations, Ms. Flannery purportedly gave each individual one or more checks she had taken from either U.S. Rehab or Lakeshore Spine & Pain.[5]

---

[4] Affidavit ¶¶ 25, 27-51, Exhibit 1.
[5] Affidavit ¶¶ 3, 59-67, Exhibit 1.

3

3. Dr. Tolga Kurt (*Cooperating Witness CW-3*) took numerous billing documents of Lakeshore Spine & Pain and provided them to the government, some of which were defined and described in the Affidavit and some of which were not.[6]

4. Dr. David Pastoor (*Cooperating Witness CW-4)* participated in an undercover recording with Defendant Rathod and Defendant Rajesh Makwana. It was unclear from the Affidavit which documents, if any, Dr. Pastoor took to assist the government in gathering evidence.

## Discovery Provided by the Government

The government has now addressed many of the issues raised in the Prior Discovery Motion and supporting brief. The information recently reviewed by the undersigned counsel shows that:

1. Amber West.

(a) The government has represented to the undersigned Counsel that the documents referred to in paragraphs 25 through 41 of the Affidavit were provided to the government by Charles Fortino, the attorney who represented Ms. West. On September 30, 2011, Mr. Fortino filed the *qui tam* lawsuit captioned *United States, et al v. Lakeshore Spine and Pain, P.C., et al.*, pending in the United States District Court for the Western District of Michigan, Southern Division, Case No. 1:11-cv-1051 (the *Qui Tam* Lawsuit). Ms. West and Dr. Kurt were the relator plaintiffs who brought the *Qui Tam* Lawsuit. According to the government, the documents referred to in paragraphs 25 through 41 of the Affidavit were given to Mr. Fortino

---

[6]Affidavit ¶¶ 85-90, Exhibit 1.

by Ms. West and Mr. Fortino then provided the documents to AUSA Beckering at the time the *Qui Tam* Lawsuit was filed.

(b) Paragraph 44 refers to an undercover recorded conversation that occurred during a meeting between Ms. West and Dr. Kevin Witt on October 25, 2011. During that meeting, Ms. West delivered three checks to Dr. Witt that were allegedly referral payments. It is believed that two of these checks (check number 10823 issued to Dr. Witt in the amount of $250.00 and check number 11018 issued to Dr. Witt in the amount of $100.00) were obtained by Ms. West at the request of law enforcement.

Paragraph 47 refers to an undercover recorded conversation that occurred during a meeting between Ms. West and Dr. Niti Thakur on October 25, 2011. During that meeting, Ms. West delivered three checks to Dr. Thakur that were allegedly referral payments. It is believed that two of these checks (check number 10822 issued to Dr. Thakur in the amount of $300.00 and check number 11016 issued to Dr. Thakur in the amount of $100.00) were obtained by Ms. West at the request of law enforcement.

Paragraph 50 refers to an undercover recorded conversation that occurred during a meeting between Ms. West and Dr. Andre Smith on November 7, 2011. During that meeting, Ms. West delivered alleged referral check number 1779 in the amount of $100.00 to Dr. Smith, which the government alleges was a referral payment. It is believed that Ms. West obtained this check at the request of law enforcement.

2. Sarah Flannery.

(a) Attached as Exhibit 3 is a one-page report prepared by the Federal Bureau of Investigation dated January 6, 2012, and a Consent to Search dated December 16, 2011,

signed by Ms. Flannery. The Consent to Search allowed the FBI to search and seize documents from an email account of U.S. Rehab Services. There is no reference in the Affidavit to any of these documents. Exhibit 3 and the documents taken by the FBI were provided to the undersigned by AUSA Beckering. Though these documents were provided to law enforcement prior to when the search warrants were issued, AUSA Beckering has represented that none of these documents were used in any manner in preparing the Affidavit and that the government is not going to use any of these documents as evidence unless the documents are obtained in another manner.

(b) Paragraph 59 of the Affidavit refers to an undercover recorded conversation between Ms. Flannery and Kyle Gandy on November 11, 2011. During that meeting, Ms. Flannery delivered alleged referral checks, number 2108 in the amount of $270, and number 2105 in the amount of $350, to Mr. Gandy. It is believed that both of these checks were obtained at the request of law enforcement.

3. Dr. Tolga Kurt.

The government has represented to undersigned that documents referred to in paragraphs 85 through 90 of the Affidavit were provided to the government by Mr. Fortino. According to the government, the documents in paragraphs 85 through 90 of the Affidavit were provided by Mr. Fortino to AUSA Beckering at the time the *Qui Tam* Lawsuit was filed.[7]

---

[7] Though it does not appear to be referenced in the Affidavit, AUSA Beckering also provided the undersigned with an email from Ms. Flannery to Defendant Rathod dated February 23, 2011 regarding billing for Dr. Kurt's services. AUSA Beckering has represented that Mr. Fortino voluntarily turned over this email to the government at some time prior to the search warrants being issued. The undersigned is not certain of how it was obtained by Mr. Fortino.

  4.  Dr. David Pastoor.

    (a)  The Affidavit does not refer to any documents being provided by Dr. Pastoor. AUSA Beckering has provided the undersigned with attached Exhibit 4. Exhibit 4 are documents that were provided to Special Agent John Anderson of the U.S. Department of Health and Human Services on July 13, 2011. None of these documents are referenced in the Affidavit. According to AUSA Beckering, these documents were not utilized in preparing the Affidavit and the government has stated that these documents will not be used as evidence at trial.

    (b)  AUSA Beckering has informed the undersigned that Dr. Pastoor also removed one box of documents from Lakeshore Spine & Pain's Ludington clinic prior to the issuance of the search warrants. According to AUSA Beckering, the government did not receive these documents until May 3, 2012. AUSA Beckering also stated that the government does not intend to use any of these documents as evidence at trial.

  The above representations of the government answer many of the questions raised in the Prior Discovery Motion and accompanying brief, as to how the government obtained the documents in support of the Affidavit. It appears that numerous documents were provided by Mr. Fortino.[8]

  The real remaining issues involve the series of undercover activities in October, November and December of 2011, described in the Affidavit involving Ms. West and Ms. Flannery secretly recording and presenting checks in an undercover capacity to individuals

---

[8] There still is the question of whether law enforcement had any contact with Dr. Kurt, Ms. West, or Mr. Fortino prior to Mr. Fortino voluntarily supplying the documents to AUSA Bekering at the time the *Qui Tam* Lawsuit was filed. It is also problematic that the Affidavit stated that the documents were received from Ms. West and Dr. Kurt when it now appears the Mr. Fortino supplied the documents to the government. Affidavit ¶¶ 25-41. 85-90, Exhibit 1.

allegedly receiving kickbacks. During all of these undercover activities, the cooperating witnesses were agents of the government.[9] As agents of the government, Ms. West and Ms. Flannery may have improperly obtained various checks from Defendant Rathod's companies as more fully described herein. At the hearing, the manner in which Ms. Flannery and Ms. West were obtaining the checks needs to be explored and established. In the event that the checks were improperly taken with the assistance or encouragement of law enforcement, Defendant Rathod would request that such checks and the tangible and testimonial evidence obtained as a result of such improper searches and seizes be suppressed.

**Argument**

A warrantless search by a private party, independent of government instruction or acquiescence, does not violate the Fourth Amendment. But if that private party is acting as an agent of the government, the search and seizure must adhere to the warrant requirements of the Fourth Amendment. *United States v. Bowers*, 594 F.3d 522, 525-526 (6th Cir. 2010). A two-part test is employed to determine if the Fourth Amendment applies to such a search. These two factors are the knowledge or acquiescence to the search by the government, and the intent of the private party conducting the search. *United States v. Bowers*, at 526. However, if "the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution . . . the private party is not an agent of the government." *United States v. Hardin*, 539 F.3d 404, 418 (6th Cir. 2009). In *Hardin*, the Sixth Circuit concluded that the apartment manager was an agent of the government. There, the evidence established that the "ruse" to have the manager enter the apartment was the idea of the police and that the manager entered the apartment to assist the police.

---

[9] Affidavit ¶¶ 46, 49, 59, 64, 70, Exhibit 1.

The burden of establishing that the evidence was obtained by an unlawful search is on the movant. *United States v. Freeland*, 526 F.3d 383, 385-386 (6th Cir. 1977). A defendant has the burden of establishing a prima facie showing that the evidence was obtained by a violation of the Fourth Amendment. *United States v. Gomez*, 770 F.2d 251, 253 (1st Cir. 1985); *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir. 1976). Upon such a showing by a defendant, the government must then demonstrate by a preponderance of the evidence that its evidence is not tainted by the illegal conduct of its agents. *United States v. Alexander*, 540 F.3d 494, 501-502 (6th Cir. 2008). Thus, until this Defendant knows the dates, places and circumstances of the recovery by the agents of the referred-to documents, he cannot make a determination whether a constitutional violation has occurred or not.

"The Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises." *New York v. Burger*, 482 U.S. 691, 699; 107 S.Ct. 2636 (1987). This protection against unauthorized searches applies even to business records that are kept in an area that could be accessed by others so long as the defendant has a reasonable expectation that the records will not be accessed without permission. *Mancusi v. DeForte*, 392 U.S. 364, 369-370; 88 S.Ct. 2120 (1968); see also, *U.S. v. McClendon*, 86 Fed. Appx. 92, 94 (6th Cir. 2004) ("The Fourth Amendment does not protect an individual's privacy only if he ensures that his possessions are placed beyond the grasping reach of his fellows.") Indeed, even delivery to a third party for a specific purpose does not authorize government agents to search the records. See, *U.S. v. Barth*, 26 F.Supp.2d 929, 937 (W.D. Tex. 1998) (delivering computer to technician for repair did not waive privacy rights or authorize technician to consent to law enforcement search of entire hard drive).

The exclusionary rule, if applicable here, would bar not only the documents which were seized, but also the introduction into evidence of testimony concerning any knowledge acquired during or as a result of an unlawful search. *Shamaizadeh v. Cunigan*, 338 F.3d 535, 551 (6th Cir. 2003). An unlawful search or seizure also bars admission of derivative evidence that is the product of the primary unlawfully obtained evidence. *Wong Sun v United States, 371 U.S.* (1963); *United States v. Alexander*, *supra* 502. Both tangible and testimonial evidence obtained during an illegal search and the derivative tangible and testimonial evidence that is the product of the illegal search are excluded from being utilized by the government. *Murray v. United States*, 487 U.S. 533, 536-537; 108 S. Ct. 2529 (1988).

Ms. West and Ms. Flannery conducted undercover activities at the request of law enforcement. The above referenced checks were obtained by them in their capacity as agents for the government. The checks were not their property, but rather were the property of the companies the government alleges were owned by Defendant Rathod. As such, Defendant Rathod has a right to an evidentiary hearing to establish how Ms. West and Ms. Flannery obtained these checks and whether the checks and all derivative tangible and testimonial evidence should be suppressed and excluded as evidence at trial. *United States v. D'Andrea*, 648 F.3d 131 (1st Cir. 2011); *United States v. Abbound*, 438 F.3d 554, 578 (6th Cir.).

## Conclusion

For the reasons set forth above, Defendant Rathod requests the opportunity to participate in the hearing set for November 5, 2012, and that all evidence obtained as a result of improper searches and seizes be suppressed.

Date: October 11, 2012	Respectfully Submitted,

            **MYERS NELSON DILLON & SHIERK, PLLC**

            By:  s/J. Terrance Dillon
                J. Terrance Dillon (P23404)
                Michael P. Farrell (P57321)
                Attorneys for Defendant Babubhai Rathod
                125 Ottawa Avenue NW, Suite 270
                Grand Rapids, MI 49503
                (616) 233-9640
                tdillon@mnds-pllc.com