IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff                      Case No. 1:12-CR-00017

vs.

                                            Hon. Janet T. Neff
                                            United States District Judge

BABUBHAI RATHOD,

        Defendant

_____/

**MEMORANDUM IN SUPPORT OF MOTION TO
REVIEW DETENTION DECISION**

**1. Overview**

The defendant was originally sentenced on August 13, 2018 to a two-year term of supervised release. His supervised release term began on June 24, 2016. It was scheduled to expire on June 23, 2018.

On May 16, 2018, the United States Probation Office filed a Petition for Warrant or Summons based on four alleged violations of the defendant's supervised release.

A warrant was authorized, and the defendant voluntarily appeared for a hearing on May 25, 2018 before the Honorable Phillip J. Green, United States Magistrate Judge.

Following that hearing, the Magistrate Judge determined that there was probable cause to bind the defendant over for a final revocation hearing before this Court. (ECF 525, Page ID 4098).

The final revocation hearing is now set for August 1, 2018.

The Magistrate Judge also ordered the defendant detained pending that hearing.

1

This Motion is not challenging the probable cause determination. Those types of challenges, if any, will be presented at the final revocation hearing.

Rather, the defense is respectfully asking this Court to conclude a) that there are conditions of release that would ensure against flight or economic danger to the community and b) that the defendant can be released subject to those conditions.

Among other things, release would facilitate the defendant's ability to assist counsel in preparing his defense. This assistance is essential since the defense involves the review of complex transactions being attributed to the defendant. Since the defendant is the only source for reconstructing this information, he would be much better able to help the defense if he was not confined pending the hearing.[1]

The defendant is willing to accept any conditions that the Court deems appropriate.

## 2. The Hearing

The Magistrate Judge correctly concluded that the bond issue was governed by F.R.Cr.P. 32.1(a)(6) and 18 U.S.C. 3143(a)(1). The defendant has the burden to show "by clear and convincing evidence" that he "will not flee or pose a danger to any other person or the community." (ECF 525, Page ID 4099).

The defendant's then-counsel made the following arguments in support of release:[2]

A. The defendant has strong family ties. He is a naturalized U.S. citizen, and he has lived in this district for over 25 years. He has a wife and three children. His children are all

---

[1] The government has also subpoenaed documents in connection with the government's independent investigation. The defendant cannot comply with the subpoena or assist in that compliance with the subpoena while he is confined.

[2] The defendant adopts all of his prior counsel's arguments for purposes of this Court's de novo review of the Magistrate Judge's detention decision.

getting their education and have succeeded in school with the defendant's strong support;

    B.   The defendant has a United States equivalent Master's Degree in Science which he earned in India;

    C.   The has three sons: Sagar graduated from Michigan State University, Manav graduated from Okemos High School, and Akash is a Senior at Okemos High School;

    D.   The defendant has traveled to India twice since he has been on supervised release. The trips were approved, and the defendant fully complied with all of the restrictions imposed;

    E.   The defendant paid all of the restitution imposed in the underlying case–more than one million dollars;

    F.   He successfully cooperated with the government;

    G.   He was on bond in the underlying criminal case and, to the best of counsel's knowledge, never had a bond issue;

    H.   These facts establish a track record of compliance;

    I.   He is tendering to the Court his own and his wife's passports;

    J.   The defendant is not a flight risk;

    K.   He was involved in a legitimate business enterprise involving Indian rice and African cashews; and

    L.   He showed up today as required.

(ECF 525, Page ID 4099-4103)

The government opposed release:

    A.   The government agreed that the defendant has ties to the community;

    B.   The government noted, however, that the defendant had exploited people to get them to cover for him and to obstruct justice;

C.  In the underlying criminal case, he also involved family members in the criminal activity (two brothers-in-law);

D.  He also exploited relationships with Ms. Patel and Dr. Macauley;

E.  During supervised release, he exploited Abid Agha by "fraudulently" using Dr. Agha's name;

F.  When the defendant traveled to India and returned, he didn't know about his current problems.  The defendant has committed several crimes, "so he's facing a lot more consequences than before;"

G.  When the defendant learned that agents were waiting at his home, he did not return home although negotiations with counsel led to his voluntary surrender;

H.  The defendant has repeatedly disobeyed the Court's orders by lying about various matters (where he's working, where he's going, and what he's doing with his money and time).  He has also used at least three different identities in his contacts with people while on supervised release;

I.  The defendant was involved in the recent creation of fraudulent documents;

J.  The defendant went to Detroit last week even though he had been told not to travel;

K.  The defendant negotiated for the purchase of Paramount Home Care in violation of his supervised release conditions, and there is also evidence of illegal sexual liaisons;

L.  The defendant has made numerous requests for early termination from supervised release;

M.  The prosecutor expressed concern about the defendant's ties to India;

N.  The defendant has allegedly used aliases while on supervised release;

O.  The conditions of supervised release included financial restrictions.  The defendant

has allegedly violated those restrictions and has allegedly inflicted harm on others;

P. The government referred to incidents in the defendant's past from 2002, 2003, and 2008;

Q. There is a potential danger related to actual or attempted obstruction, referring to documents that Dr. Macauley signed and then reported to the government;

R. Others are in potential legal jeopardy because of the defendant's conduct, including Ms. Patel, Mr. Shain, Dr. Macauley and the defendant's wife;

S. The government argued that a tether would be "meaningless." The government argued that phone use, computer use, or e-mails could be used to cause damage;

T. This damage could be done "from the comfort of his own home;" and

U. In sum, the defendant is a substantial flight risk and he poses a risk of potential economic harm to others.

(ECF 525, Page ID 4103-4112).

The Magistrate Judge graciously gave the defense an opportunity to respond:

A. The defendant's wife is present in Court and will commit to do whatever is possible to assure that the defendant appears in Court as required;

B. GPS tethers work very successfully; and

C. The defendant's presence at home is necessary to the preparation of a defense. This is a document case, and reconstructing the documents is a difficult task that would not be possible if he is confined.

The Magistrate Judge ruled that the defendant should be detained. Specifically:

A. The standard is that the defendant "must demonstrate by clear and convincing evidence that he is neither a significant flight risk nor a danger to the community;"

  B. The evidence on flight certainly meets a preponderance standard, but clear and convincing is a much closer call;

  C. The Court found that the defendant "narrowly failed" to meet the standard, but the Court continued the analysis by assuming that the standard had been met;

  D. The defendant does not present a physical risk of harm to anyone;

  E. The prostitution-related evidence does not show any danger to the community;

  F. The Court did conclude that the defendant presents an economic danger to the community;[3]

  G. The Court referred to: a) evidence that fraudulent loans were obtained which were not repaid; b) evidence that the defendant had used the identifying information of a third party to obtain loans for which the third party was responsible; c) evidence that the defendant obtained these loans on a cell phone. The Court opined that there were no conditions or combination of conditions that could guard against this type of fraud being repeated.[4]

  H. The Court opined that the Court could consider obstruction of justice even though 18 U.S.C. 3143 does not refer to obstruction. The Court expressed specific concerns about allegations regarding a document purportedly backdated within the week before the hearing. The Court opined that this act could be considered in the context of whether any condition or terms of conditions could be imposed;

---

[3] The parties acknowledged that there was no Sixth Circuit authority on the question of whether "economic" harm could be considered. Authority from other jurisdictions was considered in support of this principle.

[4] As discussed *infra*, these types of fraud allegations are very difficult to defend against. The defense will be severely hampered if these defenses have to be constructed while the defendant is confined as opposed, for example, to being restricted to his home.

  I. The Court referred to allegations that the defendant had violated conditions of supervised release, such as going to Detroit when he had not been given permission to do so;

  J. The evidence indicated that there were not only supervised release violations but other fraudulent activity which had caused harm to others; and

  K. For these reasons, the defendant was remanded.

(ECF 525, Page ID 4113-4118).*Un*

### 3. Discussion

The parties agree that the defendant has the burden of showing that he is not a risk of flight or a danger to the community by clear and convincing evidence. F.R.Cr.P. 32.1(a)(6); 18 U.S.C. 3143(a)(1).

Otherwise, the legal authority in this area–release/detention while a supervised release final revocation hearing is pending-- is quite sparse.

At the threshold, a district court's review of a Magistrate Judge's decision to release or detain a defendant is *de novo*. *E.g., United States v. Tortora*, 922 F.2d 880, 883, n.4. (1st Cir. 1990); *United States v. Reuben*, 974 F.2d 580 (5th Cir. 1992); *United States v. Clark*, 865 F.2d 1433 (4th Cir. 1989).

For purposes of this review, the defense respectfully incorporates all of the evidence and arguments presented by prior counsel at the detention hearing conducted by the Magistrate Judge.

The defense would also note that all four of the charges are Class C violations with advisory guidelines of 3-9 months. No violence is alleged. Drugs are not involved. There is no claim that the defendant presents a physical risk to anyone.

The defense would also ask this Court to consider that in the underlying criminal case, the

defendant was on bond for almost two years without any incidents.[5] He was also on bond for almost four months between his sentencing date and the date he voluntarily surrendered to the Bureau of Prisons.[6] After sentencing, he knew that he was facing a four-year prison term and a restitution obligation of approximately $1,000,000. He did not violate the terms of his bond. He did not flee. He voluntarily surrendered when he was told to do so. He did not cause economic harm to any third party while he was on bond.

As to the instant proceedings, he contacted an attorney when he learned about the proceedings. That attorney contacted the government, and the defendant appeared as he was directed to do so.

The defense submits that these facts persuasively respond to the government's concerns that he is a flight risk because he knows that he faces an on-going investigation as well as the pending supervised release violation proceedings.

The other reasons presented by his then-counsel at the hearing are also persuasive on this question.

Several of those reasons stand out:

1. The defendant has deep roots in Western Michigan which date to well before the underlying indictment in 2012. He has a wife and family. That family stood by him while he was in prison  His family still stands behind him. These family ties and roots to this District make it unlikely that he will flee;

2. The defendant did travel to India on two occasions while he was on supervised release.

---

[5] He was arrested on January 24, 2012 and voluntarily surrendered to the Bureau of Prisons on December 9, 2013. These dates can be determined from the docket and the pleadings filed.

[6] He was sentenced on August 13, 2013 and voluntarily surrendered on December 9, 2013.

Both of these trips were approved. The defendant fully complied with the approved schedule and returned to this country when he was supposed to return. The defendant tendered and offered to surrender his passport at the May, 2018 hearing. Contrary to the government's argument at the hearing, there is no evidence that the defendant has access to or would seek access to any travel documents that would substitute for the surrendered passport. There is also no evidence that the defendant has the resources to flee. Very importantly, the defendant did not flee in 2012 or 2013 when he knew that he was facing serious federal charges or after August 13, 2013, when he knew that he had been sentenced to 48 months in prison and was facing an approximate $1,000,000 financial penalty. Rather, he obeyed the conditions of his bond and voluntarily surrendered to prison on time. He does face risks presently in the form of the pending violation proceedings and an on-going investigation. However, those risks are not more severe than the risks he faced in 2012 and 2013 when he was facing both pending charges and an imposed sentence. The government presented no information which would indicate that the defendant has different motivations or incentives now than he had in 2012-2013.

    The Magistrate Judge did not consider the defendant's performance in the 2012-2013 time frame. The defense also respectfully submits that the Magistrate Judge did not give consideration to the fact that, as to the present proceedings, the defendant acted responsibly by hiring an attorney, by having that attorney contact the government, by complying with the agreement reached between his attorney and the government. The defendant had a passport and a window of opportunity if flight was a meaningful option for him. It was not a meaningful option. Compliance was.

    3. The defendant is a naturalized American citizen. The government has speculated about the defendant's potential incentives to flee but the government has produced no evidence showing

any intent to flee.

The defense respectfully submits that a combination of the arguments made at the hearing and these specific points are sufficient to establish by clear and convincing evidence that the defendant will not flee. Moreover, the defendant will accept any conditions deemed appropriate by the Court including GPS monitoring. restrictions on his movements or any other conditions determined by the Court and/or the United States Probation office.[7]

As to whether the defendant is an economic risk:

1. At the threshold, this analysis necessarily involves speculation since the analysis focuses on future behavior rather than what the defendant allegedly did in the past. If this Court agrees with the defendant about flight risk, the defense submits that the likelihood of future economic risk is low. If the defendant is not a flight risk, that means that he has decided to face the charges against him, knowing that there could be consequences if he is convicted. The defendant is an intelligent man. He knows that any acts that would cause economic harm to others would be subject to severe penalty and that the severe penalty almost certainly exceeds any benefit he might gain from wrongful acts. The defense respectfully asks the Court to consider this fact in its deliberations;

2. As to specifics, the government has presented testimony from investigators that the defendant allegedly obtained loans using false pretenses, that he allegedly used a third-party's identity to obtain a loan, and that the defendant was involved with forbidden medically-related

---

[7] Exceptions could be made for medical, religious, or legal purposes or for approved shopping and the like. Such conditions or restrictions are common and would not present any unusual or extraordinary difficulty for the probation office.

enterprises. It should be noted from Government's Exhibit 10 at the May 25, 2018 hearing that the Kabbage line of credit balance was zero. It is counsels understanding that the Greenbox credit balance is also zero.

This evidence certainly goes to the pending supervised release violations and to the pending investigation.

However, the defense would respectfully ask the Court to conclude that the release/detention decision should focus on the defendant's future conduct. While past conduct may certainly be considered as being predictors of future conduct, that past conduct does not necessarily prove that the defendant would commit any economic misdeeds while on bond.

3. The defendant's conduct while on bond in 2012-2013 is a powerful indicator of how he would conduct himself if released pending the outcome of the supervised release violation proceedings. The defendant was accused of being involved in a very complicated and extensive fraud. The allegations involved multiple companies and multiple co-defendants. Other individuals were adversely affected by the defendant's criminal activities. The defendant was on bond in connection with that case for almost two years, and despite his past conduct, he was not an economic danger to the community while on bond.

4. The alleged economic misdeeds that the government presented at the hearing involved the defendant allegedly persuading other people to assist him–most specifically Ms. Patel and Dr. Macauley. Both individuals are aware of the defendant's present legal difficulties and it is unlikely that either person would undertake actions that would involve personal risk to themselves by assisting the defendant if he was of a mind to do something economically harmful to others if he was released on bond. Indeed, according to the government, Dr. Macauley contacted the government when he felt that there was a problem with an allegedly back-dated document which

he had signed. There are no other identified individuals, including the defendant's wife, who would potentially be involved in any wrongful activity involving the defendant, particularly since the risk of any such activities is now public knowledge. These facts lessen the risk that the defendant is an economic danger.

5. The defendant has been cautioned about taking any future actions that could be construed as obstruction of justice.

6. The defendant has been cautioned that if he was granted release, he would be severely punished if he engaged in any questionable and/or illegal conduct while on release

7. The defendant respectfully submits that there are conditions that would give this Court confidence that the defendant is not an economic danger to the community. For example, the defendant could be barred from any contact with the medically-related enterprises. He could be placed on a GPS monitor. His computer usage could be monitored and/or otherwise restricted. His phone usage could be monitored and/or otherwise restricted.

In this regard, the government expressed concern that several of his alleged fraudulent activities, e.g. obtaining loans, were accomplished over the phone. However, phone usage can be restricted and monitored. The defendant has also been cautioned that any efforts to use a phone for anything even appearing to be improper would be met with a serious negative response.

The defendant is open to whatever restrictions the Court and/or the United States Probation office impose. He understands the seriousness of the allegations and his situation, and he has assured counsel that he will do nothing in the future to aggravate his legal position.

The defendant's immediate goal is to work with counsel to prepare for the August 1, 2018 hearing and to otherwise assist counsel in dealing with the on-going investigation. He also has an outstanding subpoena for documents from the government to address. These tasks are time

consuming and lend support to the argument that the defendant will not be an economic danger to the community should he be released pending the outcome of the supervised release violation proceedings.

8. In sum, the real issue is whether there are conditions that could be used to assure the Court that the defendant will not be an economic danger to the community. The Magistrate Judge concluded that there were not, but, with all respect, the Magistrate Judge did not consider on the record any specific conditions that might be adopted.

The United States Probation Office and the Court are well familiar with defendants whose compliance with bond conditions need to be more closely monitored than others. The defendant's willingness to accept and comply with any conditions makes it more likely that appropriate conditions of release can be fashioned.

Counsel would again ask the Court to consider the need to prepare for the August 1, 2018 hearing and to prepare for interactions with the government as to the on-going investigation. Such preparations need to be immediate. They are complex, and the defendant's assistance is essential. Because of the complexity of the issues and the need to collect information, the defendant will be far better to able assist counsel if he is not in jail.

*United States v. Madoff*, 586 F.Supp.2d 240 (S.D.N.Y. 2009) provides some helpful insight. The Court concluded that there were conditions of bail that could satisfy the flight/economic harm concerns of the government. At the outset, the defendant notes that the issue in *Madoff* was release pending trial. The defendant acknowledges that the standards for release for a newly-charged defendant are different than the standards for a previously-convicted defendant who is accused of supervised release violations. However, at least some of the analysis is helpful because Madoff was involved in an extremely-high-profile fraud that was far more

extensive and far more economically damaging than anything that is alleged in the instant case. Madoff was facing (and in fact eventually received) what amounts to a life sentence. Despite all of these extremely egregious facts and the government's arguments for detention, Madoff was released pending trial. Despite the greater complexity of Madoff's situation, the Court was able to fashion conditions that provided assurance that Madoff would not act inappropriately while on bond.

The Court in *Madoff* noted all of the Madoff's alleged prior misdeeds (including an alleged violation of the Court's Orders in a related civil matter), but opined that the focus is on the future, i.e., are there conditions that could satisfy the statute with respect to the defendant's future conduct. The Court reached this conclusion even though there were past obstructions of justice and the potential for obstructive conduct in the future.

Similarly, in the instant case and as discussed *supra*, the government's arguments and the Magistrate Judge's reasoning focused on what the defendant had allegedly done in the past. While all of these factors are relevant, the defense respectfully submits that they are most relevant to the content of the conditions of bail, i.e., what conditions will minimize the risk of flight or future economic harm.

The defense respectfully submits that there are conditions which would satisfy these statutory concerns. As noted *supra*, the defense is prepared to accept whatever conditions the probation office deems necessary, including, for example, GPS monitoring, restrictions on computer use, and monitoring of telephone use.

In *Madoff*, the Court agreed that economic harm was cognizable. This conclusion is consistent with the conclusion reached by the Magistrate Judge in the instant case, and, for purposes of this Motion, the defendant does not dispute that economic harm is a permissible

14

consideration when making the release/detention decision.

However, the *Madoff* Court began its analysis by focusing on whether the defendant will cause economic harm in the future. The *Madoff* Court also noted that the scope of the economic harm factor is uncertain. Even with all of the crimes that Madoff allegedly committed, the Court concluded that there was insufficient evidence of risk of future harm.

Similarly, in the instant case, the defense respectfully submits that the allegations of past conduct do not support the inference that the defendant is likely to be an economic danger to the community in the future if he is released pending his upcoming hearing. The defendant simply does not possess the resources. All of the individuals who allegedly were involved in the past economic issues are well aware of the defendant's current difficulties. It is very unlikely that any of them would undertake any of the personal risk that would be involved in assisting the defendant even if he was inclined to do anything wrong.

The defense further submits that there are restrictions which could be imposed that would make any such future economic activity unlikely.

In addition, the defendant is well aware that he is under significant scrutiny and that investigative activities are on-going. The defendant has been cautioned that any transgressions are almost certain to be discovered and that any such transgressions would be harshly punished.

## Conclusion

For all of these reasons, the defense is respectfully asking this Court to review the Magistrate Judge's detention decision, to conclude that the defendant has satisfied his evidentiary obligations, to conclude that there are conditions that would assure that the defendant is not a likely flight risk or an economic danger to the community, and to release the defendant on bond pending the violation hearing.

Respectfully submitted,

Grand Rapids, MI
July 2, 2018

  /s/ David A. Dodge
David A. Dodge (P22906)
Dodge & Dodge, P.C.
The Trust Building, Suite 845
40 Pearl Street NW
Grand Rapids, MI 49503
(616) 459-3850