UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                  Case No. 1:12-cr-17

v.                                                Hon. Janet T. Neff
                                                     United States District Judge

BABUBHAI RATHOD,

       Defendant.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVIEW
DETENTION DECISION OF MAGISTRATE JUDGE**

Defendant Babubhai Rathod is devoted to deception. Following his release from federal custody in June 2016, Mr. Rathod used multiple aliases, layers of corporate entities, shadow holding companies, and a host of bank accounts to commit new crimes and conceal nearly two years of supervised release violations from the U.S. Probation Office. The real and substantial economic harm that Mr. Rathod inflicted (including through a series of aggravated identity thefts), his efforts to obstruct the government's investigation until the moment he first appeared in this matter, and his abject refusal to abide by the Court's directives justify his continued detention pending the final revocation hearing on August 1, 2018.

**BACKGROUND**

Mr. Rathod resumed his pattern of deceit and fraud on July 5, 2016, less than one week after his release from custody.[1] Transcript, PageID.4166. At that time, Mr. Rathod directed a

---

[1] Mr. Rathod's schemes likely never ended. The government raises concerns, below, about the authenticity of medical records that Mr. Rathod filed in support of his request to delay reporting to FCI Milan in 2013. *See infra* at 5–6. As discussed during the preliminary hearing, moreover, Mr. Rathod is alleged to have solicited fraudulent medical records from a physician colleague

convicted felon, Wavy Curtis Shain, to organize Advanced Medical Services, PLLC (d/b/a Advanced Sleep Diagnostics of Michigan), a company that consolidated its operations with another provider, Sleep Diagnostics of Michigan, P.C., to operate sleep clinics throughout the State of Michigan. *Id.*, PageID.4167; Judgment, *United States v. Shain*, No. 3:09-cr-00038, ECF No. 42 (W.D. Ky. Sept. 1, 2010) (citing nine counts of wire fraud and one count of bank fraud).

In direct contravention of this Court's order that he "not operate, partner, and/or oversee any business where services are billed to Blue Cross Blue Shield of Michigan, Medicaid, and Medicare," Judgment, PageID.3799, Mr. Rathod continued acquiring and managing (not to mention operating, partnering with, and overseeing) additional health care providers that billed those public and private payers, including a durable medical equipment supplier (EZ Sleep Supplies, LLC) and a Detroit-area home health care agency (Paramount Home Care, Inc.). Transcript, *passim*. The evidence of Mr. Rathod's authority and influence over these entities, which continued well into 2018, is overwhelming and includes documents and images from Mr. Rathod's seized iPhone, documents obtained through third-party subpoenas, recorded calls, and statements and documents from Mr. Rathod's band of associates. *Id.*

Mr. Rathod, however, lied to the Probation Office about his activities and used a variety of deceits to conceal his conviction, his 20-year program exclusion, and the restrictions on his participation in health care from insurers, employees, and vendors alike. For example:

- Mr. Rathod falsely reported full-time employment by an import-export company, Elite Global Group Exim, LLC, to the Probation Office and produced a fraudulent check in response to that office's request for proof of payment. *Id.*, PageID.4142–4145, Exhibit 4; Judgment, PageID.3798

---

shortly after his incarceration in an effort to enroll in the Residential Drug Abuse Program ("RDAP") at FCI Milan. Transcript of Preliminary Hearing ("Transcript"), PageID.4187. Successful enrollment in and completion of RDAP makes inmates potentially eligible for an early release. 18 U.S.C. § 3621(e)(2)(B). The government will be filing a separate application to access Mr. Rathod's Bureau of Prisons records in connection with the RDAP investigation.

- (Standard Condition 3). Mr. Rathod thus failed to maintain legitimate, full-time employment as required by the terms of his supervision. Transcript, PageID.4236; Judgment, PageID.3799 (Special Condition 3).

- Mr. Rathod organized and/or enrolled the aforementioned health care providers in the names of others—including his wife—and used a close-knit group that included a federal felon, Mr. Shain, to carry out his business directives. Transcript, PageID.4162–4163, 4167–4168. Mr. Rathod's knowing, routine, and undisclosed contact with a felon violated the terms of his supervision. Judgment, PageID.3798 (Standard Condition 9).

- To conceal his involvement in the business operations of these health care providers, Mr. Rathod used multiple aliases, including "Chuck," "Chuck Patel," "Dr. Ahir," and "Babu Ahir." Transcript, PageID.4155–4156, 4210. Mr. Rathod used these aliases to hide his latest criminal conviction. *Id.*, PageID.4165. Mr. Rathod even established a social media presence for "Dr. Babu Ahir" and falsely linked that alias to a Pennsylvania-based insurance agency. *See* LinkedIn Profile, attached hereto as **Exhibit A**.

- While on supervised release, Mr. Rathod stole another identity—that of his physician colleague, Abid Agha, M.D.—and used Dr. Agha's name, address, date of birth, and Social Security Number to unlawfully obtain working capital loans for Advanced Medical Services. Transcript, PageID.4197–4208. Mr. Rathod fraudulently converted certain loan proceeds for his personal use and defaulted on at least one obligation, resulting in a judgment against Dr. Agha. *Id.* In addition to constituting wire fraud and aggravated identity theft, Mr. Rathod's conduct violated two more conditions of his supervision. Judgment, PageID.3798 (committing crimes on supervised release), 3799 (Special Condition 2).

- To conduct health care business—including by negotiating the purchase of, and overseeing, a Detroit-area home health care agency—Mr. Rathod frequently travelled outside the district without the Probation Office's knowledge or permission, violating yet another condition of his supervision. Transcript, PageID.4212–4213, 4216, 4258; Judgment, PageID.3799 (Standard Condition 1).

When Mr. Rathod became aware of the government's investigation, he undertook efforts to obstruct by directing the creation of a false Asset Purchase Agreement, backdated to July 2016, that purported to place two health care providers in the name of his confidant, Jankiben "Jackie" Patel. Transcript, PageID.4221–4225, Government Exhibit 15. This week, the government received evidence that after federal agents seized his phone on May 15, 2018, Mr. Rathod obtained

3

a new phone and contacted Mr. Shain, the felon, through WhatsApp, a secure and encrypted mobile messaging service.  *See* Rathod-Shain WhatsApp Messages (May 16, 2018), attached hereto as **Exhibit B**.[2]  "For safety i am using this phone," Mr. Rathod wrote.  *Id.*

Mr. Rathod requested that Mr. Shain send him the corporate document through the Advanced Medical Services e-mail address, ams4000@yahoo.com.  *Id.*  Mr. Rathod then made changes to that agreement and, on May 17, 2018 at 6:10 a.m.—well after being advised of the Court's outstanding arrest warrant and hours before his initial appearance that same day—Mr. Rathod used that e-mail address to send the revised, falsified document to Mr. Shain.  *See* E-mail from Advanced Medical Services to Wavy Curtis Shain, Legal Services Group (May 17, 2018), attached hereto as **Exhibit C**.  Jackie Patel received that document, procured the necessary signatures, and advised another associate, Richard MacAuley, M.D., that the completed document could be provided to federal agents and investigators to suggest that she, not Mr. Rathod, owned those health care providers.  Transcript, PageID.4221–4225.  The Magistrate Judge concluded that "[t]his [was] an obvious effort to obstruct justice, plain and simple."  PageID.4257.

## LEGAL STANDARD

Mr. Rathod's request implicates 18 U.S.C. § 3145(b), which provides for the review and appeal of a detention order.  The appropriate standard of review is de novo and "the Court may receive additional evidence or rely on the record of the earlier hearing."  *United States v. Martinez*, No. 1:12-cr-210, at *1 (W.D. Mich. Oct. 10, 2012) (citations omitted).  The issue of release or detention in this case is governed by Federal Rule of Criminal Procedure 32.1(a)(6), which places the burden on Mr. Rathod to establish, by clear and convincing evidence, that he will not flee or

---

[2] In these images from Mr. Shain's phone, Mr. Rathod's messages appear on the left.

pose a danger to any other person or the community.  *See also* FED. R. CRIM. P. 46.  Mr. Rathod cannot meet these burdens.

## ARGUMENT

I. **There Are Serious Questions About Whether Mr. Rathod Tried To Mislead The Court In 2013.**

In seeking review of the Magistrate Judge's decision, Mr. Rathod places particular emphasis on his conduct in 2012 and 2013.[3]  He raises the point in discussing the risk of flight, Defendant's Brief ("Def. Brief"), PageID.4270, his danger to the community, *id.*, PageID.4272, and the sufficiency of alternative release conditions, *id.*, PageID.4272.  To begin, Mr. Rathod would have the Court selectively review his record, focusing on 2012 and 2013 to the exclusion of the array of frauds and deceits he perpetrated while on supervised release between 2016 and 2018.  Recent information, moreover, raises questions about Mr. Rathod's conduct in his last case.

Mr. Rathod twice requested to delay reporting to FCI Milan.  These requests included an unsuccessful motion on December 9, 2013—his report date—citing a foot injury and a doctor's instructions "not to bear weight on his foot at least until the stitches are removed in ten to fourteen days."  Emergency Motion to Extend Date to Report (the "Delay Motion"), PageID.3891, 3893 (emphasis added).  In support of his motion, Mr. Rathod filed purported medical records from an

---

[3] Mr. Rathod also broadly argues that the Court should release him because "he would be much better able to help the defense if he was not confined pending the [final revocation] hearing." Defendant's Brief, PageID.4263; *see also id.* PageID.4274 (citing "the complexity of the issues and the need to collect information").  District courts in this Circuit have considered and rejected this argument. *See United States v. Ho*, No. 3:16-cr-46, 2016 WL 5875005 (E.D. Tenn. Oct. 7, 2016) (holding that the complexity of a case does not relate to any of the enumerated detention factors and is not a proper consideration).

urgent care provider in Okemos, Michigan, stating that Mr. Rathod would recover in two to four weeks "[i]f he will not faces any complication" [sic]. *Id.*, PageID.3895–3898.[4]

In light of his more recent misconduct, the government reviewed Mr. Rathod's court submissions from his last case. As part of that review, the government obtained Mr. Rathod's medical records from the urgent care practice. On June 26, 2018, the government received those records, which differ from the records that Mr. Rathod filed with the Court. With respect to his limited weight bearing—the stated basis for Mr. Rathod's Delay Motion—the actual medical records state that Mr. Rathod's "restrictions include limited weight bearing for five days" with no mention whatsoever of any complications that could further delay his report date. Bosworth Urgent Care Letter, attached hereto as **Exhibit D**. The treating physician, citing the curious spelling and grammatical errors in the court submission ("injured his both feet," "[i]f he will not faces any complication," etc.), denies creating the letter that Mr. Rathod filed with the Court.

While the government is still investigating this issue, these discrepancies and Mr. Rathod's propensity for falsifying documents raise concerns about whether he attempted to obstruct or mislead the Court in 2013. The circumstances surrounding Mr. Rathod's Delay Motion and his solicitation of fraudulent records to enroll in RDAP at FCI Milan—which could have resulted in an early release—reveal an individual who will do anything, and implicate his closest family members, to avoid incarceration. Transcript, PageID.4187–4188 (discussing allegations of Mrs. Rathod's role in the RDAP fraud). These considerations should inform the Court's review of Mr. Rathod's repeated claims of compliant conduct in his last case.

---

[4] Mr. Rathod's Delay Motion and medical records were not filed under seal and are matters of public record. For that reason, the government has redacted certain personal identifiers from its exhibits but is not moving to seal or otherwise restrict access to this pleading.

## II. Mr. Rathod Clearly Poses A Danger To Other People And The Community.

Not only has Mr. Rathod failed to meet his burden of establishing, by clear and convincing evidence, that he will not pose a danger to other people or the community, but the Magistrate Judge found that "even if the government had the burden of proving clear and convincing evidence that Mr. Rathod presents a danger, they would have met that burden." *Id.*, PageID.4256.

Mr. Rathod does not dispute that the risk of economic harm is a permissible consideration in the detention calculus. Def. Brief., PageID.4275–4276. Rather, Mr. Rathod discounts any such harm because the balances of three fraudulent loans—loans that he obtained through a series of aggravated identity thefts, and certain proceeds of which he unlawfully converted for his personal use—are zero. *Id.*, PageID.4271–4272. Mr. Rathod, however, ignores the over $500,000.00 in Medicare and Medicaid reimbursements alone that his health care providers received by falsely concealing Mr. Rathod's ownership, authority, and involvement in their operations.[5]

As for the fraudulent loans that Mr. Rathod obtained for Advanced Medical Services, those loan payments should have never been disbursed because Mr. Rathod stole Dr. Agha's identity to obtain them.[6] Transcript, PageID. 4197–4208. In touting that "the Greenbox balance is . . . zero," Def. Brief, PageID.2472, Mr. Rathod continues to ignore the personal consequences that his frauds inflicted on people like Dr. Agha. To obtain that loan funding, Mr. Rathod not only used Dr.

---

[5] The government presently calculates that (1) Advanced Medical Services received over $275,000.00 in Medicaid reimbursements between January 12, 2017 and January 24, 2018; (2) EZ Sleep Supplies received over $45,000.00 in Medicaid reimbursements between January 15, 2017 and January 21, 2018; and (3) Paramount Home Care received over $225,000.00 in Medicare reimbursements between approximately December 4, 2017 and April 23, 2018.

[6] Dr. Agha denies knowing about these loans, let alone giving Mr. Rathod permission to use his identity. Transcript, PageID.4207–4208. Regardless, permission is no defense to aggravated identity theft because an individual cannot consent to the fraudulent use of his identity. *See United States v. Whicker*, 628 Fed. App'x 361, 364–65 (6th Cir. 2015) (citing *United States v. Lumbard*, 706 F.3d 716 (6th Cir. 2013)).

Agha's name, address, date of birth, and Social Security Number, but he further falsified Dr. Agha's signature on a notarized Confession of Judgment that made Dr. Agha personally liable for any default.  *See* Judgment of Confession Materials, attached hereto as **Exhibit E**.  (The government has also been unable to find the Notary Public identified on the affidavit in the State of Michigan's notary database.)  After Mr. Rathod wired certain of those loan proceeds to India, Transcript, PageID.4202–4203, Advanced Medical Services defaulted on the loan and Greenbox Capital (through its corporate parent, Merchant Capital Partners) obtained a judgment against Advanced Medical Services and Dr. Agha individually, *see* **Exhibit E**.

Mr. Rathod asks the Court to disregard the aggravated identity theft he used to obtain the loans and the resulting legal and personal consequences of his crimes, the very considerations the Magistrate Judge cited in making an "easy call on danger to the community . . . ."  Transcript, PageID.4256–4257.  The Court should affirm the Magistrate Judge's finding that Mr. Rathod has "utterly failed" to establish, by clear and convincing evidence, that he does not pose a risk of danger to others.  *Id.*, PageID.4256.

### III. <u>Mr. Rathod Fails To Provide Clear Or Convincing Evidence That He Will Not Flee</u>.

In arguing that he is not a flight risk, Mr. Rathod asserts that (1) he has family and community roots in this district; (2) he returned from two trips to India while on supervised release; (3) there is no evidence of his intent to flee; and (4) he tendered his passport and lacks the resources to travel.  Def. Brief, PageID.4269–4271.  While community ties are in some ways subjective inquiries, the Court should evaluate Mr. Rathod's sincerity based on his willingness to manipulate and exploit family and friends in his schemes.  *See* Transcript, PageID.4187, 4189; *infra* n.6.  Mr. Rathod's long history of implicating those closest to him, including in this case, suggests someone who uses his community to develop a stable of willing accomplices.

8

In citing his approved international travel, which occurred before he was aware of this investigation, Mr. Rathod fails to mention (1) his frequent undisclosed and unapproved travel outside the district to violate his release terms and engage in other illegal behavior; and (2) his recent travel to Detroit over the Probation Office's express prohibition.  Transcript, PageID.4188.  Mr. Rathod also neglects his persistence in seeking early termination of his supervision so that he could freely travel to India.  *Id.*, PageID.4218.  His stated intent to leave the country—coupled with his unauthorized travel outside the district and the serious consequences he faces for his supervised release violations and new crimes—raises the possibility, if not probability, that Mr. Rathod will flee if released from custody.  *See United States v. Norman*, No. 08-tp-80004-cr, 2009 WL 464078, at *3 (S.D. Fla. Feb. 24 2009) (citing the defendant's unapproved travel as supporting a finding that he "may try to abscond from supervision if released").  Contrary to his unsupported claims about lacking the resources to travel, substantial sums have been wired out of Rathod-controlled accounts to India since June 2016.  *Id.*, PageID.4202–4203.

Finally, the Court should weigh the surrender of Mr. Rathod's passport against his propensity to falsify documents, his assumption of multiple aliases, and a series of aggravated identity thefts that allowed him to fraudulently obtain tens of thousands of dollars within days.  *See* Transcript, PageID.4205–4207, Exhibit 11 (recording of loan call in which Mr. Rathod, posing as Dr. Agha, stated that "last time I got [money] on same day" that he filed the loan application); *see also United States v. Martinez*, No. 3:08-cr-233, 2009 WL 702828, at *3 (W.D.N.C. Mar. 13, 2009) (noting that surrendering a passport "does little" when the defendant has "an ability to assume identities other than his own as well as a wherewithal to generate enough money to flee").  The Court should adopt the Magistrate Judge's finding that Mr. Rathod failed to establish, by clear and convincing evidence, that he is not a serious flight risk.  Transcript, PageID.4255.

### IV. Mr. Rathod Fails To Prove That He Will Not Flee Or Pose Dangers To The Community If Released Under Alternative Conditions.

Since his release from federal custody in June 2016, Mr. Rathod has repeatedly and intentionally violated at least seven conditions of his supervised release: Standard Conditions 1, 3, and 9; Special Conditions 2, 3, and 4; and the general prohibition on committing new crimes. Judgment, PageID.3798–3799. The Magistrate Judge was correct in finding that Mr. Rathod is "not going to abide by any condition or combination of conditions this Court could possibly put in a bond when he has so blatantly violated so many conditions of supervised release . . . ." Transcript, PageID.4258; *see also United States v. Jokhoo*, No. 12-309, 2013 WL 1314987, at *2 (D. Minn. Apr. 1, 2013) (affirming that the defendant was unlikely to abide any combination of conditions based on repeated violations of her release terms); *Norman*, 2009 WL 464078, at *3 (citing the futility of other conditions where the defendant violated his release terms, committed new crimes, "pose[d] a threat of economic danger," and left the district without approval).

Mr. Rathod's reliance on *United States v. Madoff*, 586 F. Supp. 2d 240 (S.D.N.Y. 2009) is misplaced. *Madoff* is procedurally inapposite because it involved the government's motion for pretrial detention, not a petition to revoke supervised release where the rules place a demanding burden on the defendant. *See id.* at 246–47; FED. R. CRIM. P. 32.1(a)(6). In contrast to this case, where the Magistrate Judge found clear evidence of Mr. Rathod's obstruction, Transcript, PageID.4257, the *Madoff* court declined to rule whether the dissipation of potential restitution assets, pretrial, was obstructive conduct, *Madoff*, 586 F. Supp. 2d at 249–50. Finally, unlike *Madoff*, in which the government "conced[ed] that there ha[d] been no violation of the specific conditions of bail," *Madoff*, 586 F. Supp. 2d at 246, Mr. Rathod's legion of supervised release violations alone dispense with any argument for alternative release conditions, *see Jokhoo*, 2013 WL 1314987, at *2.

While Mr. Rathod complains that the Magistrate Judge "did not consider on the record any specific conditions that might be adopted," the Magistrate Judge considered the same conditions that Mr. Rathod now proposes. *See* Transcript, PageID.4257. To the extent that Mr. Rathod argues for phone or computer monitoring, the Magistrate Judge presciently anticipated the difficulties in tracking Mr. Rathod's phones and electronic communications. *Id.* Indeed, after the preliminary hearing, the government discovered that Mr. Rathod, having been advised of the Court's outstanding arrest warrant, used secure and encrypted systems to obstruct this investigation. *See* **Exhibit C** ("Messages to this chat and calls are now secured with end-to-end encryption.").

This leaves Mr. Rathod to argue that admonishments and incentives are sufficient to regulate his conduct. Transcript, PageID.4272–4274. Restricting contact with health care providers has already failed as a condition of release, however, and cautionary advice from counsel carries little weight compared to the binding court orders that Mr. Rathod flaunted. *See* Transcript, PageID.4258 ("It meant very little to you that Judge Neff told you couldn't do these things."). While Mr. Rathod believes that his cohorts are unlikely to engage in further misconduct if he is released, three of them participated, at Mr. Rathod's request, in falsifying a corporate document after being interviewed by federal agents and receiving government subpoenas.[7] *Id.*, PageID.4221–4225.

Mr. Rathod does not challenge this obstruction, which the Magistrate Judge cited—along with Mr. Rathod's history of violations, his new crimes, and his unapproved travel outside the

---

[7] To further address any concerns about his misconduct upon release, Mr. Rathod assures the Court that "[t]here are no other identified individuals, including the defendant's wife, who would potentially be involved in any wrongful activity involving the defendant . . . ." Def. Brief, PageID.4273 (emphasis added). Mr. Rathod knows better. Mrs. Rathod is under investigation for, among other things, her alleged role in the RDAP fraud and for signing corporate documents to conceal Mr. Rathod's purchase and operation of a Detroit-area home health care agency. Transcript, PageID.4187. She is being represented by separate counsel in those matters.

11

district—as further support that Mr. Rathod will not abide by any conditions upon release. *Id.*, PageID.4257–4258.  The Court should adopt the Magistrate Judge's opinion, find that Mr. Rathod failed to meet his burdens, and conclude that the recently discovered evidence of additional frauds to avoid incarceration only further support his continued detention.

## CONCLUSION

For the reasons discussed at the preliminary hearing, and for the reasons discussed more fully above, the government respectfully requests that the Court affirm the Magistrate Judge's detention decision.

Dated: July 6, 2018                                  Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

 /s/ *Adam B. Townshend*
ADAM B. TOWNSHEND
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of Michigan
P.O. Box 508
Grand Rapids, MI 49503
Tel: (616) 808-2130
E-mail:  Adam.Townshend@usdoj.gov