Inbox - wcurtisshain@legalservicesgroup.net (1) - Outlook

**Reply** **Reply All** **Forward**

Thu 5/17/2018 6:10 AM

**A**

Advanced <ams4000@yahoo.com>

please make changes

To    wcurtisshain@legalservicesgroup.net

This message has been replied to or forwarded.

APA Sleep Diagnostics - Revised Draft-2.pdf
74 KB

APA Sleep Diagnostics - Revised Draft-2.docx
34 KB

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is entered into as of July18, 2016, by and between Advanced Medical Services, PLLC., d/b/a Advanced Sleep Diagnostics of Michigan, a Michigan professional limited liability company, who has a mailing address of:  P.O. Box 26132 Lansing, Michigan 48909 ("Buyer"); and Sleep Diagnostics of Michigan, P.C. ("Seller").

## RECITALS

**WHEREAS,** the Seller, is the owner of the assets of Sleep Diagnostics of Michigan, P.C. ("Sleep Diagnostics");

**WHEREAS,** prior to the execution of this Agreement, the Seller has not pledged, encumbered, and/or otherwise transferred the assets of Sleep Diagnostics to a third party;

**WHEREAS,** the Buyer, based upon the terms and conditions set forth herein, desires to buy the assets of Sleep Diagnostics from the Seller; and

**WHEREAS,** the Seller, based upon the terms and conditions set forth herein, desires to sale the assets of Sleep Diagnostics to the Buyer.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer hereby agree as follows:

1. **PURCHASE PRICE.**  The Buyer and Seller agree that the purchase price for the assets of Sleep Diagnostics is and shall be for good and valuable consideration up to $50,000 and paid to mutually agreed debtor ("Purchase Price").

2. **ASSETS INCLUDED IN SALE.**

    a. Clinical Assets.  The Buyer and Seller agree that the purchase of the assets of Sleep Diagnostics shall include all clinical assets of Sleep Diagnostics.  These assets shall include, but are not necessarily limited to:  medical equipment, software, patient records, billing records. See Attached Exhibit A.

    b. Non-Clinical Assets.  The Buyer and Seller agree that the purchase of the assets of Sleep Diagnostics shall include all non-clinical assets of Sleep Diagnostics.  These assets shall include but are not necessarily limited to:  all other assets not previously defined herein. See Attached Exhibit A.

    c. Account Receivable and Management Agreement.
    Seller makes no warranty as to the collectability or any of the aforesaid accounts receivable and any expenses of collection shall be solely borne by Buyer.  Seller acknowledges that all accounts receivable and unbilled claims for services rendered which shall have accrued prior to closing in whatever amounts as may ultimately be collected, are included in the purchase price and are not subject to any claim or offset by Seller. To allow Buyer to collect on the

outstanding account receivables for Sleep Diagnostics, Seller agrees to allow Buyer to have full access to any and all applicable billing information belonging to Sleep Diagnostics.  This shall include, but is not necessarily limited to: provider numbers, NPI, EDI compliance, insurance contracts, etc.  All monies owed under this subsection shall be collected in the name of the Seller, with Seller's full consent and permission.  Seller shall, under separate cover, execute a practice management agreement providing Buyer any authority not specifically authorized herein.

3. **NOTICE OF SALE.**  Upon execution of this Agreement, and payment of the Purchase Price, the Seller shall notify the Internal Revenue Service ("IRS"), and any other interested party, of the sale of the assets of Sleep Diagnostics.  The notice shall provide a time frame of at least 28-days in which the notified party can object to the sale.  Seller shall provide Buyer with a copy any notice sent along with anything received in response thereto.  If, a notified party objects, within the 28-day time frame, Buyer and/or Seller may cancel this Agreement without recourse.  In the event of cancelation, the full Purchase Price shall be refunded to Buyer.

4. **LOCATION OF ASSETS.**   The Seller and Buyer agree that upon execution of this Agreement and extending until the expiration of the notice period, as specified in paragraph 3, the assets of Sleep Diagnostics shall not be removed from their present locations(s).

5. **MISCELLANEOUS.**

   a. <u>Entire Agreement; Integration</u>. This Agreement constitutes the entire agreement between the parties and may not be modified or changed except by written instrument executed by both Seller and Buyer. All prior negotiations, understandings and agreements are superseded and are merged herein.

   b. <u>Severability</u>. If one or more of the provisions of this Agreement or any application thereof shall be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions hereof, and any application thereof, shall in no way be affected or impaired and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

   c. <u>Counterparts; Enforceability</u>. This Agreement may be executed in multiple original, electronic or facsimile counterparts, all of which shall be deemed an original, and which when combined shall constitute one complete, fully enforceable, Agreement.

   d. <u>Binding Effect; Inurement</u>. The terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns, except as expressly set forth herein.

   e. <u>Captions and Headings</u>. All captions and headings are for convenience or reference only and do not constitute a part of this Agreement or affect its meaning.

2

      f.      <u>Jurisdiction and Venue</u>. This Agreement shall be construed in accordance with the laws of the State of Michigan. Venue for any cause of action, controversy or dispute regarding this Contract or the subject matter hereof shall be properly brought only in the Circuit Court of Ingham County, Michigan, and each party consents to the jurisdiction of such court.

      g.      <u>Condition.</u> SELLER shall sell, convey and transfer and PURCHASER shall purchase and accept all equipment's, inventory, supplies and other tangible property comprising the Purchased Assets in AS IS condition, with all faults. SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, OR THE CONDITION THEREOF.  SELLER HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

**IN WITNESS WHEREOF**, each party hereto has caused this Agreement to be executed on its behalf by its duly authorized officer or member, as applicable, all as of the day and year first above written.

| | |
|---|---|
| **SELLER:** | **BUYER:** |
| **SLEEP DIAGNOSGITCS OF MICHIGAN, P.C.** | **ADVANCED MEDICAL SERVICES, PLLC.** |
| | |
| _____ | _____ |
| By:  Richard MacAuley, Member | By:  Jackie Patel, Authorized Agent |

3

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is entered into as of July18, 2016, by and between Advanced Medical Services, PLLC., d/b/a Advanced Sleep Diagnostics of Michigan, a Michigan professional limited liability company, who has a mailing address of:  P.O. Box 26132 Lansing, Michigan 48909 ("Buyer"); and Sleep Diagnostics of Michigan, P.C. ("Seller").

## RECITALS

**WHEREAS,** the Seller, is the owner of the assets of Sleep Diagnostics of Michigan, P.C. ("Sleep Diagnostics");

**WHEREAS,** prior to the execution of this Agreement, the Seller has not pledged, encumbered, and/or otherwise transferred the assets of Sleep Diagnostics to a third party;

**WHEREAS,** the Buyer, based upon the terms and conditions set forth herein, desires to buy the assets of Sleep Diagnostics from the Seller; and

**WHEREAS,** the Seller, based upon the terms and conditions set forth herein, desires to sale the assets of Sleep Diagnostics to the Buyer.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer hereby agree as follows:

1. **PURCHASE PRICE.**  The Buyer and Seller agree that the purchase price for the assets of Sleep Diagnostics is and shall be for good and valuable consideration up to $50,000 and paid to mutually agreed debtor ("Purchase Price").

2. **ASSETS INCLUDED IN SALE.**

   a. <u>Clinical Assets.</u>  The Buyer and Seller agree that the purchase of the assets of Sleep Diagnostics shall include all clinical assets of Sleep Diagnostics.  These assets shall include, but are not necessarily limited to:  medical equipment, software, patient records, billing records. See Attached Exhibit A.

   b. <u>Non-Clinical Assets.</u>  The Buyer and Seller agree that the purchase of the assets of Sleep Diagnostics shall include all non-clinical assets of Sleep Diagnostics.  These assets shall include but are not necessarily limited to:  all other assets not previously defined herein. See Attached Exhibit A.

   c. <u>Account Receivable and Management Agreement.</u>
   Seller makes no warranty as to the collectability or any of the aforesaid accounts receivable and any expenses of collection shall be solely borne by Buyer.  Seller acknowledges that all accounts receivable and unbilled claims for services rendered which shall have accrued prior to closing in whatever amounts as may ultimately be collected, are included in the purchase price and are not subject to any claim or offset by Seller. To allow Buyer to collect on the

      outstanding account receivables for Sleep Diagnostics, Seller agrees to allow Buyer to have full access to any and all applicable billing information belonging to Sleep Diagnostics.  This shall include, but is not necessarily limited to: provider numbers, NPI, EDI compliance, insurance contracts, etc.  All monies owed under this subsection shall be collected in the name of the Seller, with Seller's full consent and permission.  Seller shall, under separate cover, execute a practice management agreement providing Buyer any authority not specifically authorized herein.

3. **NOTICE OF SALE.**  Upon execution of this Agreement, and payment of the Purchase Price, the Seller shall notify the Internal Revenue Service ("IRS"), and any other interested party, of the sale of the assets of Sleep Diagnostics.  The notice shall provide a time frame of at least 28-days in which the notified party can object to the sale.  Seller shall provide Buyer with a copy any notice sent along with anything received in response thereto.  If, a notified party objects, within the 28-day time frame, Buyer and/or Seller may cancel this Agreement without recourse.  In the event of cancelation, the full Purchase Price shall be refunded to Buyer.

4. **LOCATION OF ASSETS.**   The Seller and Buyer agree that upon execution of this Agreement and extending until the expiration of the notice period, as specified in paragraph 3, the assets of Sleep Diagnostics shall not be removed from their present locations(s).

5. **MISCELLANEOUS.**

    a.    <u>Entire Agreement; Integration</u>. This Agreement constitutes the entire agreement between the parties and may not be modified or changed except by written instrument executed by both Seller and Buyer. All prior negotiations, understandings and agreements are superseded and are merged herein.

    b.    <u>Severability</u>. If one or more of the provisions of this Agreement or any application thereof shall be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions hereof, and any application thereof, shall in no way be affected or impaired and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

    c.    <u>Counterparts; Enforceability</u>. This Agreement may be executed in multiple original, electronic or facsimile counterparts, all of which shall be deemed an original, and which when combined shall constitute one complete, fully enforceable, Agreement.

    d.    <u>Binding Effect; Inurement</u>. The terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns, except as expressly set forth herein.

    e.    <u>Captions and Headings</u>. All captions and headings are for convenience or reference only and do not constitute a part of this Agreement or affect its meaning.

    f.    <u>Jurisdiction and Venue</u>. This Agreement shall be construed in accordance with the laws of the State of Michigan. Venue for any cause of action, controversy or dispute regarding this Contract or the subject matter hereof shall be properly brought only in the Circuit Court of Ingham County, Michigan, and each party consents to the jurisdiction of such court.

    g.    <u>Condition.</u> SELLER shall sell, convey and transfer and PURCHASER shall purchase and accept all equipment's, inventory, supplies and other tangible property comprising the Purchased Assets in AS IS condition, with all faults. SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, OR THE CONDITION THEREOF. SELLER HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, NATURE OR DESCRIPTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

**IN WITNESS WHEREOF**, each party hereto has caused this Agreement to be executed on its behalf by its duly authorized officer or member, as applicable, all as of the day and year first above written.

| | |
|---|---|
| **SELLER:** | **BUYER:** |
| **SLEEP DIAGNOSGITCS OF MICHIGAN, P.C.** | **ADVANCED MEDICAL SERVICES, PLLC.** |
| | |
| _____ | _____ |
| By:  Richard MacAuley, Member | By:  Jackie Patel, Authorized Agent |

3